[No. F014609. Fifth Dist. Aug. 31, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
BRIAN KEITH SEABOURN, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of parts II, III, IV, and V.

## COUNSEL

Betty L. Dawson and Cynthia A. Thomas, under appointments by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Acting Assistant Attorney General, Margaret Garnand Venturi and Alan Ashby, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

### BIANCHI, J.*—

#### STATEMENT OF THE CASE

In September 1989, defendant was arraigned and entered pleas of not guilty. In October, the charges against him were consolidated. In June 1990 a second consolidated and amended information was filed charging defendant with multiple violations of the Penal Code:[1] count I, section 212.5 (first degree robbery of Jayne Lee Waters in an inhabited dwelling on or about Feb. 7, 1989); count II, section 212.5 (first degree robbery of Jeffrey Payne in an inhabited dwelling on or about Feb. 10, 1989); count III, section 212.5 (first degree robbery of Brian J. Porter in an inhabited dwelling on or about Feb. 10, 1989); count IV, section 209 (kidnap for robbery of Jeffrey Payne on or about Feb. 10, 1989; count V, section 209 (kidnap for robbery of Brian Porter on or about Feb. 10, 1989). In each of the above five counts, it was further alleged defendant personally used a handgun within the meaning of section 12022.5. It was also alleged defendant suffered a prior serious felony conviction (robbery) within the meaning of sections 667 and 1192.7, subdivision (c).

---

*Retired judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]All statutory references are to the Penal Code unless otherwise indicated.

Defendant admitted the prior felony conviction allegation. The jury found defendant guilty as charged, and found true the arming enhancements.

Defendant was resentenced on those convictions along with resentencing on other cases: count I, the principal term, the midterm of four years plus two years for the arming enhancement, to run consecutive; counts II and III, the midterm of four years, both of which were stayed; counts IV and V, two consecutive life terms, plus two years each for the arming allegations found true in each count, both to run consecutive to any other sentence. Determinate terms from the other cases were made subordinate terms.

### STATEMENT OF FACTS

*Count I: Jayne Lee Waters.*

Waters was living in a rural neighborhood near Denair on February 7, 1989. She was home that day and in the company of her eight-year-old daughter. About 2:40 p.m. she answered her door to find defendant claiming to have run out of gas and asking to use her telephone. Defendant displayed a handgun and told her she was being robbed. He thereafter proceeded to take a diamond wedding ring belonging to Waters, which she valued at approximately $3,800.

Waters contacted the sheriff's department. She described defendant and said he spoke with a Southern accent. She initially described defendant as having hair or "something" placed sporadically around his face. At trial she testified that she later realized what she saw on defendant's face was dried glue.

At a photographic lineup on February 13, Waters quickly identified defendant as the robber. She later identified defendant at his preliminary hearing, as well as at trial.

A live lineup was scheduled for February 15, but defendant refused to participate.

*Counts II and IV: Jeffrey Payne.*

On February 10, Payne lived in Modesto and was home about 7:30 p.m. with a friend, Brian Porter. The front doorbell rang, and Payne opened the door, finding defendant who claimed he had car trouble. After Payne allowed defendant inside, defendant displayed a handgun and announced that a robbery was in progress. Payne and Porter were ordered to lie on the floor

and told they would be shot if they did not cooperate. Personal items were removed from their persons and from the residence.

Porter and Payne were ordered into Porter's pickup truck and released in an isolated area.

Payne contacted authorities. He described the robber and said he observed a scar on the robber's left cheek, but was unable to see the same scar on defendant at trial. The robber had an "Okie-type accent." Besides identifying defendant at trial, he identified defendant in a photo lineup shortly after the crime took place.

*Counts III and V: Brian J. Porter.*

Porter likewise identified defendant as the robber, and identified him at a photo lineup. Porter gave a similar description of the robbery to that of Payne. Porter also described a scar on the left side of defendant's face, and stated that no scar was apparent on defendant as he sat in court at trial.

*Evidence Relevant to All Counts.*

On the night of February 11, defendant was arrested at a motel in Modesto. Defendant had no scars on his face. No items taken during the robberies were in his possession. Similarly, no contraband was found in the motel room. It was observed defendant spoke with a Southern drawl.

An informant, Freddie Salas, assisted with the arrest to the extent that he had a tape-recorded conversation with defendant in which defendant stated he used "crazy glue" or "super glue" on his face in order to simulate a scar.

The tape recording and a transcript of the tape were admitted in evidence. Defendant made statements to David Hager while the two were incarcerated. Hager had a considerable criminal record. He produced a letter in which murder of witness/victims was solicited. Testimony linked the handwriting on the letter to that of defendant. Defendant denied the conversation or writing the letter.

A third individual to whom defendant made incriminating statements, also a witness with a long criminal record, testified defendant attempted to fence stolen merchandise with him and that defendant described the loot as being from "house robberies." Defendant likewise denied this conversation.

A sweater found in the room where defendant was arrested was identified by one of the victims as being identical to the one taken during the robbery. Defendant denied the sweater was even present when he was arrested.

Every victim positively identified defendant from the time of the initial investigations until trial.

Defendant testified at length with regard to his whereabouts at the relevant times. He called several witnesses to corroborate his alibis. He admitted suffering a prior felony conviction for robbery which resulted in a prison sentence, and having suffered a prior murder conviction. Both crimes involved use of a firearm.

## DISCUSSION

## PART I

### *CALJIC No. 4.71*

Defendant first argues the court erred prejudicially by instructing with CALJIC No. 4.71, as follows: "When, as in this case, it is alleged that the crime—excuse me—the crime charged was committed on or about a certain date, if the jury finds that the crime was committed it is not necessary that the proof show that it was committed on that precise date. It is sufficient if the proof shows that the crime was committed on or about that date."

Defendant is correct when observing that the information charged the robbery of Waters occurred "on or about the seventh day of February, nineteen hundred and eighty-nine" and that the robbery and kidnapping of Payne and Porter were alleged to have taken place "on or about the tenth day of February nineteen hundred and eighty-nine . . . ." He is also correct that the victims testified to exact dates on which the crimes occurred, including the time of day. The Attorney General acknowledges that the evidence "unquestionably fixed the time of the offenses alleged."

The Comment to CALJIC No. 4.71 provides in pertinent part:

"This instruction is improper if the People's evidence fixes the commission of the offense at a particular time to the exclusion of any other time and the defendant has presented evidence of an alibi as to that particular time. [Citations.]" (Com. to CALJIC No. 4.71 (5th ed. 1988 bound vol.) p. 186.)

Reviewing a case in which only CALJIC No. 4.71 was given, the California Supreme Court recognized the Comment to CALJIC No. 4.71 to be an accurate statement of the rule. (*People v. Jones* (1973) 9 Cal.3d 546, 557 [108 Cal.Rptr. 345, 510 P.2d 705].)

In *Jones*, a police officer testified he purchased illegal narcotics from the defendant on three occasions. Initially, he gave the date of the last purchase as March 17, 1970, but after reviewing his notes testified that it took place on March 24. The officer emphasized the March 24 date as the correct one when cross-examined. (9 Cal.3d at pp. 556-557.) Considerable defense evidence was intended to establish the defendant was in another state on that date.

The court found prejudicial error by use of CALJIC No. 4.71 and relied upon language from *People* v. *Waits* (1936) 18 Cal.App.2d 20, 21 [62 P.2d 1054], citing *People* v. *Morris* (1906) 3 Cal.App. 1, 10 [84 P. 463], which held that it was error " '. . . to instruct the jury . . . that it was wholly immaterial on what day the offenses were committed.' " (*People* v. *Jones*, *supra*, 9 Cal.3d at p. 557.)

The Attorney General takes the position that because CALJIC No. 4.50 was also given in the case before us, no error occurred.

CALJIC No. 4.50 provides:

"The defendant in this case has introduced evidence for the purpose of showing that [he] [she] was not present at the time and place of the commission of the alleged crime for which [he] [she] is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was present at the time the crime was committed, you must find [him] [her] not guilty."[2]

The Attorney General concedes there are no published cases which resolve the effect of giving CALJIC Nos. 4.50 and 4.71 together.[3] Instead, a position is taken on what may occur, at least on a case-by-case basis, where the two instructions are given together:

---

[2]The Use Note to CALJIC No. 4.50 provides in pertinent part:

"This instruction is designed for use where the only theory of the prosecution is that defendant was present at the commission of the crime and defendant's evidence of an alibi is admitted. If the prosecution theory is either that the defendant was present or, if not present, that he was an aider and abettor or a conspirator and evidence of an alibi is admitted, CALJIC 4.51 should also be given." (Use Note to CALJIC No. 4.50 (5th ed. 1988 bound vol.) p. 175.)

The Comment to CALJIC No. 4.50 provides in pertinent part:

"The function of evidence relating to alibi is not to establish a defense nor to prove anything, but merely to raise a reasonable doubt of the defendant's presence at the scene of the crime." (Com. to CALJIC No. 4.50 (5th ed. 1988 bound vol.) p. 175.)

[3]*People* v. *McDade* (1991) 230 Cal.App.3d 118 [280 Cal.Rptr. 912] is the only case found that discusses an instance where both instructions were given. The issue as presented to the court in *McDade* was not the same as in the present case. Instead, the defendant in *McDade* was focusing upon whether a unanimity instruction was necessary.

"The two instructions are not incompatible. CALJIC No. 4.71 is always legally correct, but has the potential in an alibi case to mislead a jury, while CALJIC No. 4.50 eliminates that potential. In an abundance of caution the Supreme Court in *Jones* banned CALJIC No. 4.71 alone in alibi cases, but the court has never addressed whether CALJIC No. 4.50 is sufficient to dispel the potential mischief of CALJIC No. 4.71. Respondent submits that at least in this case it was."

It is unnecessary to go as far as the Attorney General has and conclude that the giving of the two instructions together results in no error. It is clear the giving of CALJIC No. 4.50 was not error since the facts support giving it. ■ Neither instruction is required sua sponte. (See *People v. Freeman* (1978) 22 Cal.3d 434, 437 [149 Cal.Rptr. 396, 584 P.2d 533].) ■ However, the facts offer no support for giving of CALJIC No. 4.71. The prosecution presented facts and argument specifying the exact dates and times when the crimes occurred. The defendant likewise provided alibis for those dates and times.

At most the giving of CALJIC No. 4.71 might confuse a jury where there is no evidence to support it. However, under the facts here, where the entire case was based upon specific times and places, such confusion would not have taken place. In *Jones* there was the initial evidence the crime occurred on an earlier date. And although the witness corrected this mistake, it was possible the jury could have relied upon the earlier statement by the witness.

As a result, we conclude that although it was error to give CALJIC No. 4.71, the error was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]; see also *Rose v. Clark* (1986) 478 U.S. 570, 576-579 [92 L.Ed.2d 460, 469-471, 106 S.Ct. 3101].)

The evidence of guilt was overwhelming: defendant made incriminating statements which were tape-recorded, solicited further crimes to prevent prosecution, attempted to fence some of the stolen merchandise from one robbery on the day after it occurred, was in possession of the type of weapon used in the robberies when the fencing attempt took place, was arrested with a sweater identical to one taken in one of the robberies, was identified in a photographic lineup soon after the robberies occurred, was positively identified in court by all victims, and made other unrecorded incriminating statements.

■ Defendant's argument reversal per se is required is misplaced. The giving of CALJIC No. 4.71 was not equivalent to a directed verdict. Defendant was not misled to his detriment with regard to his right to defend

allegations charging him with crimes on particular dates. He defended by providing alibis for those exact dates. Similarly, his right to have the jury decide every material issue was not infringed. Given the facts of this case, it is apparent those issues had to be determined in order for the jury to reach guilty verdicts since dates were provided in the evidence, argued by the prosecution, and defended against.

Finally, the jury was properly instructed on the elements of the crimes of robbery and kidnap, consequently rendering unpersuasive defendant's argument that the giving of CALJIC No. 4.71 relieved the prosecution of its burden to prove every essential element of these crimes beyond a reasonable doubt.

PARTS II-V*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

Judgments are affirmed.

Martin, Acting P. J., and Thaxter, J., concurred.

---

*See footnote, *ante,* page 187.