[No. E017290. Fourth Dist., Div. Two. Sept. 10, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
SANG THAI CHUNG, Defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV, V, VI, VII, VIII, and IX.

## COUNSEL

Stokke & Riddet, Allan H. Stokke, Robison D. Harley, Jr., and Correen Wiley Ferrentino for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, Janelle Marie Boustany and Jean Hume, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, J.—**

### I.

Defendant Sang Thai Chung[1] was convicted of 10 counts of receiving stolen property (Pen. Code, § 496, subd. (a)) and 1 count of removal of identification or serial number from a vehicle component (Veh. Code, § 10751).

The jury was unable to agree on two conspiracy charges. The conspiracy charges were based on the theory that defendant Sang and others owned a chop shop[2] in violation of Vehicle Code section 10801, and that the conspiracy was manifested by overt acts of obtaining a stolen Mazda van, dismantling it, discarding parts of it near a public highway, and transporting the engine and transmission to defendant Sang's auto dismantling yard for sale.

---

[1]During trial, defendant was referred to as Mr. Sang and a codefendant was referred to as Mr. Chung. We will therefore refer to the defendant as "defendant Sang."

[2]A "chop shop" is a location where stolen cars are illegally dismantled for the purpose of selling the parts. (Veh. Code, § 250.)

Defendant Sang was sentenced to three years in state prison. He appeals, raising several alleged instructional errors. Finding no error, we affirm.

## II. FACTS

Deputy Scott testified that he found chopped up car parts on a highway that runs from the City of Highland to Mentone and Yucaipa in June 1994, and again in October 1994. Pieces of approximately 20 stolen cars were recovered.

After investigation, a house in Yucaipa was placed under surveillance on October 18, 1994. A search warrant was served at the house on October 19, 1994, and a chop shop was found.

During the surveillance, officers observed a van being loaded in the backyard. The van was followed to an auto wrecking yard in Fontana. About 10 minutes later, the van drove to defendant Sang's auto dismantling yard. The van went through a gate into the yard and subsequently exited. The officers believed that the van had carried and unloaded a stolen engine.

The officers then searched defendant Sang's auto dismantling yard under authority of Vehicle Code section 2805. They found seven engines plus other components whose numbers indicated that they had been installed on stolen vehicles. Defendant Sang was in the yard office, but he claimed that he knew nothing about the van or stolen engines. Defendant Sang had no documentation for the stolen engines. One engine serial number was defaced.

In addition, three other stolen engines were found in April 1994, at a nearby yard which was owned by defendant Sang's wife and operated by his brother.

As a result of these discoveries, defendant Sang was charged with receiving stolen property and removing an engine serial number. Defendant Sang testified and denied any knowledge of the stolen engines.

## III. PREINSTRUCTION OF THE JURY

The trial judge, following his apparent custom, gave half of the jury instructions at the beginning of trial after opening statements and before the first witness was called. The remaining instructions were given at the end of trial after closing arguments, and the earlier instructions were not repeated.

At the beginning of trial, the trial judge explained that the instructions given at the beginning, and particularly those relating to the evaluation of the credibility of witnesses, would assist the jurors in doing their jobs. The trial

judge also instructed them that "[t]he fact I give it at the beginning has no more significance to you [*sic*], nor the fact that I give some at the end."

■ Defendant Sang argues that the trial court abused its discretion by failing to read all of the instructions at the end of trial. He cites Penal Code section 1093, subdivision (f), which states: "The judge may then [i.e., after closing arguments] charge the jury, and shall do so on any points of law pertinent to the issue . . . . At the beginning of the trial or from time to time during the trial, and without any request from either party, the trial judge may give the jury such instructions on the law applicable to the case as the judge may deem necessary for their guidance on hearing the case." Acknowledging that the timing of the giving of jury instructions is a matter within the discretion of the trial court (Pen. Code, § 1094), defendant Sang argues that the trial court abused its discretion by not rereading the initial instructions at the end of trial.

Defendant Sang cites *People* v. *Valenzuela* (1977) 76 Cal.App.3d 218 [142 Cal.Rptr. 655]. In that case, the trial court instructed the jury at the close of opening statements concerning the credibility of witnesses. "During the closing arguments both counsel discussed the law on the credibility of witnesses and attempted to paraphrase part of the instructions previously given on the subject. Thereafter, the trial court gave its final instructions to the jury but did not repeat the instructions on credibility." (*Id.,* at p. 220.) The appellate court held that ". . . while the trial court did not prejudicially err in failing to reinstruct the jury, it would have been the better practice to have done so." (*Ibid.*) The appellate court found that ". . . even when a party requests instructions at the close of argument, if the court has already instructed on the subject it may in its sound discretion refuse to reinstruct. This necessarily follows from the broad discretion vested in the trial court by virtue of section 1094." (*Id.,* at p. 221.) However, the appellate court added the caveat that ". . . the judge must always be alert to the possibility that counsel in the course of argument may have befuddled the jury as to the law. If this occurs, then either at the time the confusion arises or as part of the final instructive process the judge should rearticulate the correct rule of law." (*Ibid.*) Accordingly, the court found a duty to reinstruct if it becomes apparent that the jury may be confused on the law.

Respondent directs us to *People* v. *Lamb* (1988) 206 Cal.App.3d 397 [253 Cal.Rptr. 465]. In that case, the trial court gave 25 instructions before oral argument. After argument, it gave six additional instructions. The appellate court again held that the matter is within the trial court's discretion, and the discretion was properly exercised. The court held that the procedure used was "wholly reasonable and therefore fully within the court's discretion."

(*Id.,* at p. 400.) It therefore found no error. (See also *People* v. *Pena* (1972) 25 Cal.App.3d 414 [101 Cal.Rptr. 804], overruled on other grounds, *People* v. *Duran* (1976) 16 Cal.3d 282, 292 [127 Cal.Rptr. 618, 545 P.2d 1322, 90 A.L.R.3d 1]; *People* v. *Johnson* (1967) 253 Cal.App.2d 396, 399 [61 Cal.Rptr. 225].)

We agree with respondent that defendant Sang has not shown any abuse of the trial court's broad discretion. Penal Code section 1093, subdivision (f) plainly authorizes the trial court to instruct the jury on principles of law "[a]t the beginning of the trial or from time to time during the trial . . . ." It does not require the rereading of all instructions at the end of trial. Penal Code section 1094 specifically gives the trial court discretion to vary the order of proceedings stated in Penal Code section 1093. As our Supreme Court has stated: "[D]efendant complains of the fact that the trial court chose to give the jury its instructions on circumstantial evidence at the beginning rather than the end of the trial; this procedure, however, is within the discretion of the court." (*People* v. *Webb* (1967) 66 Cal.2d 107, 128 [56 Cal.Rptr. 902, 424 P.2d 342, 19 A.L.R.3d 708].)

While we agree with *Valenzuela* that the trial court would abuse its discretion if it failed to reinstruct after evidence of juror confusion, there was no evidence of juror confusion here. *Valenzuela* finds evidence of juror confusion because three full days had elapsed between the "preinstruction" and closing argument, counsel had argued credibility of witnesses in closing argument and counsel "had attempted in a disjointed fashion to paraphrase a portion of the law on credibility." (*People* v. *Valenzuela, supra,* 76 Cal.App.3d 218, 221.) It cites the delay between the preinstruction and juror deliberations as a factor which may cause juror confusion: "It also is reasonable to conclude that at this juncture some jurors would be unable to remember with certainty the court's preinstructions three days earlier. Therefore, the trial court should have exercised its discretion within the bounds of caution by taking the time required to reread the instructions." (*Id.,* at p. 222.)

Here, defendant Sang argues that six full days elapsed between the preinstruction and deliberations, and that the jury must therefore have been confused. We disagree. We agree with *Valenzuela* that the deciding issue is the possibility of juror confusion, and that prudence dictates that the jury be fully reinstructed at the end of a long trial. The trial court should be alert to signs of juror confusion in a longer trial and should reinstruct the jury as necessary to dispel any confusion.

Here, however, the trial was not lengthy, and there was no evidence of juror confusion. In fact, the prosecutor argued from the instruction on

credibility of witnesses as part of his closing argument, and read the significant portions of it to the jury. Second, we note that defendant Sang did not object to the preinstruction procedure, and did not request rereading of the initial instructions at the end of trial. Third, the full package of instructions was given to the jury in writing so that the jurors could consult it during deliberations. The individual jurors could thus refresh their recollection as necessary.

The process of instructing jurors at the end of a trial is long and tedious. Breaking instructions into phases of the trial does not tax the attention span of jurors, provides timely and useful information to jurors as the trial progresses, and arguably benefits the parties.

We therefore find no evidence of juror confusion here. In the absence of such evidence, the presumption that the jurors regularly performed their duties prevails (Evid. Code, § 664), and the trial judge did not abuse his discretion when he gave a portion of the instructions after opening arguments and a portion of the instructions after closing arguments.

IV.-IX.*

. . . . . . . . . . . . . . . . . . . . . . . . .

X.   DISPOSITION

The judgment is affirmed.

Ramirez, P. J., and Ward, J., concurred.

---

*See footnote, *ante*, page 755.